Stephen R. Thomas, ISB No. 2326
Tyler J. Anderson, ISB No. 6632
Andrea J. Rosholt, ISB No. 8895
MOFFATT, THOMAS, BARRETT, ROCK &
      FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
srt@moffatt.com
tya@moffatt.com
ajr@moffatt.com
26660.0000

Attorneys for Defendant Video 6 LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OREGON-IDAHO UTILITIES, INC., an Oregon Corporation, and MEDIASNAP SOLUTIONS, LLC, a Delaware limited liability company,<br><br>      Plaintiffs,<br><br>vs.<br><br>SKITTER CABLE TV, INC., a Georgia Corporation, SKITTER, INC., a Georgia Corporation, GALVA CABLE COMPANY, LLC, a Georgia limited liability company, SOUTHEAST CONTENT GROUP, LLC, a Georgia limited liability company, TBM CONTENT PARTNERS, LLC, a Georgia limited liability company, VIDEO 6 LLC, a Missouri limited liability company, KINGDOM TELEPHONE COMPANY, a Missouri telephone corporation, and ROBERT SAUNDERS, an individual,<br><br>      Defendants. | Case No. 1:16-cv-00228-EJL<br><br>**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT FILED BY VIDEO 6 LLC** |

## I.      INTRODUCTION

This lawsuit arises from a Franchise Agreement between Oregon-Idaho Utilities, Inc. ("OIU") and MediaSnap Solutions, LLC ("MediaSnap") (Collectively, OIU and MediaSnap are referred to as "Plaintiffs") and Skitter Cable TV, related to Plaintiffs' right to operate a Skitter TV Franchise.  Plaintiff OIU entered into the Franchise Agreement on June 5, 2012 (Dkt. 01-1).[1]

On June 6, 2016, Plaintiffs filed a 175-count Complaint (Jury Demanded) (Dkt. 01) against Skitter Cable TV, Inc., Skitter, Inc., Galva Cable Company, LLC, Southeast Content Group, LLC, TBM Content Partners, LLC, Video 6 LLC, Kingdom Telephone Company and Robert Saunders ("Initial Complaint").

In the Initial Complaint, Plaintiffs sued Video 6 for tortious interference with contract (Initial Complaint, Third Cause of Action) and for violation of state and federal racketeering laws (*Id.*, Sixth and Seventh Causes of Action, respectively).

On September 9, 2016, Video 6 filed a motion to dismiss (Dkt. 29) together with a memorandum ("Video 6 Mem.") in support of Video 6's motion to dismiss all claims asserted against it in the Complaint and Demand for Jury Trial filed September 9, 2016 (Dkt. 29-1). Video 6 attacked  Plaintiffs' racketeering claims on the basis that the predicate acts giving rise to Plaintiffs' racketeering claims occurred well before Video 6 was formed and that Plaintiffs failed to establish a pattern of racketeering activity.[2]  In its moving papers, Video 6 sought dismissal of

---

[1] According to Plaintiffs, OIU assigned its rights under the Franchise Agreement to MediaSnap on June 6, 2012.

[2] Defendant Video 6 is a Missouri limited liability company, duly organized pursuant to Missouri law on August 23, 2013.  See Missouri Secretary of State Charter No. LC1337131, attached as Exhibit A to Video 6's Memorandum In Support of Motion to Dismiss (Dkt. 29-1).

Plaintiffs' tortious interference with contract claim against Video 6 on the basis that, as pled, Video 6 was not a third party to the Franchise Agreement.  Video 6 Memo. at 12-14 (citing *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho*, 123 Idaho 650, 654, 851 P.2d 946, 950 (1993) (the actions of an agent are the actions of the corporation)).[3]

On November 4, 2016, Plaintiffs filed Plaintiffs' Opposition to Defendant Video 6 LLC's Motion to Dismiss ("Plaintiffs' Opp. Memo.") (Dkt. 43), together with Plaintiffs' Motion to File First Amended Complaint (Dkt. 44) and Plaintiffs' Memorandum in Support of Motion to File First Amended Complaint (Dkt. 44-1); and proposed First Amended Complaint (Dkt. 44-2).

As it related to Plaintiffs' state and federal racketeering claims, Plaintiffs agreed that "Plaintiffs will, as part of the concurrently filed Motion to File First Amended Complaint and associated First Amended Complaint, be removing Video 6 from the Sixth Claim for Relief and Seventh Claim for Relief."  Plaintiffs' Opp. Memo. at 8.

However, Plaintiffs refused to dismiss Video 6 completely from this lawsuit. Instead, Plaintiffs represented that they were not alleging that Video 6 was acting as the agent for Skitter.  *See* Plaintiffs' Opp. Memo., p. 6-7 ("Video 6 is not alleged to be either an agent of Defendants or a party to that agreement.").  Thereafter, Plaintiffs submitted a proposed First Amended Complaint.  (Dkt. 44-2).

---

[3] According to Plaintiffs' Initial Complaint, "Video 6 has been participating in the management, communications and decision making" of the Skitter Defendants.  Complaint ¶ 96. Plaintiffs have alleged that Video 6, in this role, owed Plaintiffs a duty to perform under the Franchise Agreement.  *See, e.g.*, Complaint ¶ 115 ("Video 6 failed to perform [its] obligations under the Franchise Agreement.").

The proposed First Amended Complaint removes Video 6 from the state and federal law racketeering claims.  As to Plaintiffs' tortious interference claim, the proposed complaint removes reference to Video 6 failing to perform contractual obligations under the Franchise Agreement.

Despite Plaintiffs' opportunity to cure any alleged defects, Plaintiffs' proposed First Amended Complaint fails to provide even the basic "notice" as to how Video 6 tortiously interfered with the Franchise Agreement causing a breach of that Agreement.  This is especially true where, as here, Plaintiffs contend that Skitter was in material breach of the Franchise Agreement from the outset (more than a year before Video 6 was in legal existence).  For the reasons contained herein, Video 6 requests that this Court deny Plaintiffs' proposed First Amended Complaint, as it relates to Video 6.

## II.      STANDARD OF REVIEW

"A party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  In a court's determination to grant leave to amend, the court considers "whether amendment would prejudice the defendant and whether amendment would be futile."  *Ridenour v. Bank of Am*., N.A., 23 F. Supp. 3d 1201, 1204 (D. Idaho 2014) (citing *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051–52 (9th Cir.2003)).  *Fletcher v. Corizon, LLC*, No. 1:14-CV-00532-CWD, 2015 WL 7451164, at *2 (D. Idaho Nov. 23, 2015).  In this case, any amendment would be futile and it is apparent that Complaint's deficiencies cannot be cured as to Video 6.

# III.    ARGUMENT

## A.    Minimum Standards for Pleading a Plausible Claim for Tortious Interference with Contract.

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The Complaint must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

A *prima facia* tortious interference with a contract claim requires a plaintiff to prove: "(a) the existence of a contract, (b) knowledge of the contract on the part of the defendant, (c) ***intentional interference causing a <u>breach</u> of the contract***, and (d) injury to the plaintiff resulting from the breach." *Magnuson  v. Magnuson*, No. 2:15-CV-000282-EJL, 2016 WL 3906578, at *2 (D. Idaho July 14, 2016) (citing *Barlow v. Int'l Harvester Co.*, 522 P.2d 1102, 1114 (Idaho 1974)) (citations omitted) (emphasis added).

## B.    Plaintiffs' Proposed First Amended Complaint Fails To Provide Video 6 With Fair Notice of Its Alleged Tortious Interference.

The <u>**only**</u> factual allegations asserted against Video 6 in the proposed Amended Complaint are as follows:

> 97. On August 22, 2013, Mr. Young sent an email to Mr. Musgrave, indicating that Kingdom Telephone and five other Skitter franchisees "have formed an LLC called Video 6." The

email indicated that Video 6 intended to exert control over Skitter's business decisions and business trajectory and would serve as a "conduit" of funds to and from Skitter.

98. ***Based upon information and belief***, Video 6 has been exerting improper control over the business decisions and business trajectory of Skitter since its formation.  Plaintiffs were never informed that Video 6 was appointed or authorized to act as an agent of Skitter or other Defendants.

. . . .

101. On or about February 25, 2014, Plaintiffs learned that they would no longer be able to provide the Product using satellite equipment and thereafter the services would only be available through fiber optic cable.  Based upon information and belief, Mr. Saunders, Skitter, Galva and Video 6 knew of this fact a significant amount of time prior thereto.

*       *       *

118. The "Termination Letter" stated that "Skitter is terminating the Agreement pursuant to the terms of Section 15(a)(i) of the Agreement (failure to launch within one year) effective immediately," even though Mr. Saunders, Skitter, Galva and Video 6 were solely responsible for the failures of the Product.

Proposed Amended Complaint, ¶¶ 97-98, 101, 118 (emphasis added).

On this thin basis, the heart of which is hedged "upon information and belief," Plaintiffs allege that Video 6 intentionally interfered with the Franchise Agreement by directing the Skitter Defendants to "change, alter, or otherwise violate the terms and conditions of the Franchise Agreement."  Proposed First Amended Complaint, ¶ 146.  In addition to omitting detail as to how Video 6 exerted control over the Skitter Defendants, Plaintiffs' vague reference to unspecified "terms and conditions" fails to give Video 6 fair notice of actual "terms or conditions" Video 6 allegedly directed the Skitter Defendants to "change, alter, or otherwise violate."

Moreover, Plaintiffs' use of the phrase "upon information and belief" as a method to selectively qualify critical facts underlying the alleged breach, i.e., that Video 6 exerted control over Skitter, cannot serve as the basis of a plausible claim.  As one U.S. District Court has observed, "Rule 11(b) of the Federal Rules of Civil Procedure provides that by submitting a pleading to the court, the signatory is *always* certifying that, 'to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" *Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, *1 (N.D. Cal. 2014).  As a result, the phrase "'on information and belief' at best would constitute a surplusage." *Id.* at *2.

The district court's observations in *Delphix* apply with equal force here.  "Where, as here, some of the allegations are qualified with the phrase and others are not, a reasonable inference arises that it is intended as caveat, to provide additional protection should plaintiff be unable to prove any of the factual allegations.  It thus creates a further inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree." *Id.*  The district court's conclusion in *Delphix* also applies to Plaintiffs' pleading effort: "[e]ven though the phrase is technically surplusage that could simply be disregarded in an appropriate case, here it undermines [Plaintiffs'] argument that the facts it has pleaded are sufficient to support a plausible" claim for relief. *Id.*  Because Plaintiffs are heavily relying on assertions based upon information and belief that Video 6 exerted control over Skitter, it must make those averments without the caveat and with additional detail explaining

the basis for their beliefs.[4]  This is especially true where, as here, Plaintiffs contend that Skitter was in material breach of the Franchise Agreement *at the outset* because Skitter "did not have sufficient capabilities to deliver and provide the products and equipment, and Skitter, Southeast Content Group and TBM Content Partners did not own or possess sufficient rights in the content to perform its duties under the Franchise Agreement."  Complaint, ¶ 60.  In fact, Plaintiffs assert a claim of fraud against the Skitter Defendants on the basis that Skitter defendants "induced Plaintiffs to enter into the Franchise Agreement and pay the consideration by promising that these Defendants would provide equipment, services, and content consistent with the Franchise Agreement, *which Defendants knew they could <u>never</u> provide and in fact did not provide*."  *Id.,* ¶ 134 (emphasis added).  These events occurred more than a year before Video 6 was formed as a legal entity in August 2013.  Simply put, if the Franchise Agreement was incapable of being performed at the outset – and before Video 6 was formed – how could Video 6 have plausibly tortiously interfered to cause a breach?

        To compound the absence of plausible allegations aimed at establishing that Video 6 exerted control over Skitter, Plaintiffs have failed to plead any facts that would suggest that Video 6 had a legal or contractual duty to inform Plaintiffs that Skitter would no longer be able to provide the Product using satellite equipment.  According to Plaintiffs, they are not alleging that Video 6 was acting as the agent of the Skitter Defendants and have affirmatively represented that they are not contending that Video 6 was Skitter's agent.  Plaintiffs' Opp. Memo., p. 6-7.  In the absence of an allegation that Video 6 was acting on behalf of Skitter as

---

[4] By contrast, Plaintiffs allege that the Franchise Agreement was materially breached by the Skitter Defendants *before* Video 6 was formed.  Plaintiffs detail those alleged breaches in the proposed Amended Complaint.

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT FILED BY VIDEO 6 LLC - 8**

Skitter's agent, Plaintiffs' allegations fail to establish any alleged tortious interference by Video 6 causing a breach of the Franchise Agreement, a requirement to pleading a cause of action for tortious interference with contract. Skitter's independent termination of the Franchise Agreement, without more, does not expose Video 6 to liability for tortious interference with contract.

### IV.     CONCLUSION

For the foregoing reasons, Video 6 respectfully requests that the Court enter an order denying Plaintiffs' claims against Video 6 with prejudice.

DATED this 28th day of November, 2016.

MOFFATT, THOMAS, BARRETT, ROCK &
FIELDS, CHARTERED


By  /s/ Stephen R. Thomas
    Stephen R. Thomas – Of the Firm
    Attorneys for Defendant Video 6 LLC

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT FILED BY VIDEO 6 LLC - 9**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of November, 2016, I filed the foregoing **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT FILED BY VIDEO 6 LLC** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

William M. Symmes
wms@witherspoonkelley.com

Erik Strindberg
erik@utahjobjustice.com

T. Guy Hallam, Jr.
guy@idahojobjustice.com

Erika Birch
erika@idahojobjustice.com

R. Keith Roark
keith@roarklaw.com

Richard L. Mount
rim@witherspoonkelley.com

Donald J. Farley
djf@powerstolman.com

      /s/ Stephen R. Thomas
Stephen R. Thomas