# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OREGON-IDAHO UTILITIES, INC., an Oregon corporation, and MEDIASNAP SOLUTIONS, LLC, a Delaware limited liability company,<br><br>           Plaintiffs,<br><br>v.<br><br>SKITTER CABLE TV, INC., a Georgia corporation; SKITTER, INC., a Georgia corporation; GALVA CABLE COMPANY LLC, a Georgia limited liability company; SOUTHEAST CONTENT GROUP, LLC, a Georgia limited liability company; TBM CONTENT PARTNERS, LLC, a Georgia limited liability company; VIDEO 6 LLC, a Missouri limited liability company; KINGDOM TELEPHONE COMPANY, a Missouri telephone corporation, and ROBERT SAUNDERS, an individual;<br><br>           Defendants. | Case No. 1:16-cv-00228-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court in the above entitled matter are: (1) the Skitter Defendants' Motion for Change of Venue (Dkt. 24); (2) Defendant Robert Saunders' Motion to Transfer Venue (Dkt. 27); (3) Defendant Video 6 LLC's Motion to Dismiss (Dkt. 29); and (4) Plaintiffs' Motion to Amend the Complaint (Dkt. 44). All four motions have been fully briefed and are ripe for the Court's consideration. However, in the interest of judicial efficiency, the

Court will address only the Skitter Defendants Motion for Change of Venue (Dkt. 24) and Defendant Saunders' Motion to Transfer Venue (Dkt. 27) (collectively "Venue Motions").

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Venue Motions are hereby decided on the record before this Court without oral argument.

## INTRODUCTION

As explained more fully below, the Court hereby grants the Venue Motions. All of the claims in this case arise from a Franchise Agreement between Defendant Skitter Cable TV, Inc. ("Skitter Cable TV") and Plaintiffs Oregon-Idaho Utilities, Inc. ("OIU") and MediaSnap Solutions, LLC.[1] This Franchise Agreement included a forum-selection clause in which the parties agreed that any litigation brought by either party against the other in connection with any rights or obligations arising out of the Franchise Agreement would be instituted in either Georgia state court in Gwinnett County or the United States District Court for the Northern District of Georgia. In addition, all of the Defendants have now consented to the change in venue. (Dkts. 24, 27, 30, 32). Thus, for the convenience of the parties and in the interest of justice, the Court will transfer the case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) for all future proceedings.

---

[1] Plaintiff OIU assigned all of its rights and obligations under the Franchise Agreement to Plaintiff MediaSnap Solutions, LLC. (Dkt. 101, ¶ 62).

# BACKGROUND

The following allegations are derived from the original Complaint filed in this action on June 6, 2016 (Dkt. 1), unless otherwise specifically noted.

## 1.      Parties

Plaintiffs are OIU and Mediasnap Solutions, LLC ("Mediasnap"). Defendants are: (1) Skitter Cable TV; (2) Skitter, Inc.; (3) Galva Cable Company, Inc. ("Galva Cable"); (4) Southeast Content Group, LLC ("Southeast Content Group"); (5) TBM Content Partners, LLC ("TBM Content Partners"); (6) Video 6 LLC ("Video 6"); (7) Kingdom Telephone Company; and (8) Robert Saunders.

Defendant Skitter Cable TV is a wholly-owned subsidiary of Defendant, Skitter, Inc. Defendants Galva Cable; Southeast Content Group, LLC; and TBM Content Partners are also subsidiaries of Skitter, Inc. (Dkt. 25.) Collectively, these Defendants are referred to herein as the "Skitter Defendants." All of the Skitter Defendants are either Georgia corporations or Georgia limited liability companies. The Skitter Defendants are represented jointly by counsel and together filed one of the Venue Motions. (Dkt. 24.)

Defendant Kingdom Telephone Company is a Missouri telephone company and, like OIU, was a franchisee of Skitter Cable TV. Kingdom Telephone solicited funds from other franchisees ostensibly to help the Skitter Defendants meet operating expenses. In addition, Kingdom Telephone was instrumental in the formation of Defendant Video 6, which was created and used to infuse cash into the Skitter Defendants and exert control over the Skitter Defendants' business decisions.

Defendant Robert Saunders is an individual resident of Georgia and the Chief Executive Officer of Skitter Cable TV and Skitter, Inc. Plaintiffs believe Mr. Saunders is an officer or member of and serves in various leadership capacities in the Skitter Defendants as well as Defendant Video 6.

**2.      General Allegations**

OIU is a provider of telephone public utility services in parts of Oregon and Idaho. In 2007, OIU began offering broadband DSL services in Idaho, Oregon, and Nevada. Sometime thereafter, OIU began considering its options for offering its rural customer base internet TV services.

Ultimately, on or about June 5, 2012, OIU and Skitter Cable TV entered a Franchise Agreement. OIU entered the Franchise Agreement based on Skitter Cable TV's representations that it had a working platform that would enable OIU to provide its customers with a full television channel line-up, including local and satellite channels.

The Franchise Agreement states that it is between OIU and Skitter Technologies, Inc. However, it is undisputed that in September 2014, Skitter Technologies, Inc. changed its name to Skitter Cable TV. In addition, on June 6, 2012, Plaintiff OIU assigned its rights and obligations under the Franchise Agreement to Plaintiff MediaSnap, which was formed specifically for the purpose of operating OIU's Skitter Cable TV franchise.

In the Franchise Agreement, the parties agreed to a forum selection clause requiring them to institute any litigation "in connection with any rights or obligations arising out of this Agreement" in either Qwinnett County, Georgia or the United States District Court for the North District of Georgia, Atlanta Division. (Dkt. 1-1.) The parties further agreed that

"[t]he validity and effect of this [Franchise] Agreement are to be governed by and construed and enforced in accordance with the laws of the State of Georgia." *Id.*

Plaintiffs allege that the Skitter Defendants and Defendant Saunders made various ongoing misrepresentations of fact and other false statements in the course of their dealings with Plaintiffs between June 2012 and May 2016. (Dkt. 44-2.) These misrepresentations induced Plaintiffs to: (1) enter the Franchise Agreement; (2) wire $295,000 to the Skitter Defendants for the equipment, services, and content promised in the Franchise Agreement; (3) purchase various equipment; and (4) not cancel the Franchise Agreement and request a full refund. In addition, the Skitter Defendants misrepresented their financial standing and requested repeated infusions of cash to help them continue operations and meet their obligations under the Franchise Agreement.

Plaintiffs allege conspiracy and enterprise theories of liability connecting the conduct of all of the Defendants together. This includes making false statements, soliciting funds, and managing the Skitter Defendants in such a way that Plaintiffs were deprived of the benefit of the bargain they had agreed to as outlined in the Franchise Agreement.

Ultimately, on April 6, 2016, Defendant Saunders sent Plaintiffs a letter terminating the Franchise Agreement "[e]ven though [the Skitter Defendants] and Video 6 failed to perform their obligations under the Franchise Agreement." (Dkt. 1, ¶ 115.) On or about May 1, 2016, Defendants shut off all Skitter Cable TV services provided through Plaintiffs' franchise and pursuant to the Franchise Agreement.

3.    **Claims**

Plaintiffs bring seven claims in the Complaint. These include:

- Breach of contract (against the Skitter Defendants),

- Breach of the covenant of good faith and fair dealing (against the Skitter Defendants),

- Fraud (against the Skitter Defendants and Robert Saunders),

- Tortious Interference with Contract (against Video 6),

- Unjust Enrichment (against all Defendants),

- Racketeering Activity in violation of Idaho Code § 18-7804 (against all Defendants), and

- Racketeering in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1985 (against all Defendants).

**4.     Proposed Amended Complaint**

On November 4, 2016, Plaintiffs filed a Motion to File First Amended Complaint (Dkt. 44) with a Proposed First Amended Complaint attached. (Dkt. 44-2.) The Court has reviewed that proposed pleading solely for the purpose of determining the Motions to Change Venue.

Plaintiffs moved to file an amended complaint in response to Defendant Video 6's Motion to Dismiss. (Dkt. 44-1.) The proposed changes were intended to: (1) add greater specificity to the fraud, RICO, and racketeering claims; (2) create more continuity as to the various claims; and (3) clarify allegations against Video 6 and the other Defendants. *Id.*

As they relate to the Venue Motions, the proposed First Amended Complaint adds more specific allegations concerning the Skitter Defendants' misrepresentations and omissions allegedly inducing Plaintiffs to: (1) enter the Franchise Agreement, (2) amend

the Franchise Agreement, and (3) continue to perform their obligations under the Franchise Agreement. (Dkt. 44-2.) The additional allegations further clarify that Defendant Kingdom Telephone was a Skitter franchisee and took an active role in raising money for the Skitter Defendants to continue to operate the Skitter franchise in a "bailout" that included the creation of Defendant Video 6. *Id.*

Plaintiffs allege that Video 6 "has been exerting improper control over the business decisions and business trajectory of Skitter since its formation." *Id.* Plaintiffs further allege that Video 6, along with all of the other Defendants, was ultimately responsible for the failure of Skitter Cable TV to provide Plaintiffs what was promised in the Franchise Agreement: a working platform that would have enabled Plaintiffs to provide its customers with a full television channel line-up through an inexpensive set-up box. The legal claims in the proposed first Amended Complaint are substantively the same as those alleged in the original Complaint.

## ANALYSIS

The Skitter Defendants and Defendant Saunders seek a transfer of venue to the Northern District of Georgia pursuant to the parties' forum-selection clause in the Franchise Agreement, which states:

> The parties . . . agree that any litigation brought by either party against the other party in connection with any rights or obligations arising out of this Agreement shall be instituted in a federal or state court of competent jurisdiction with venue only in the county of Qwinnett, State of Georgia, or in the United States District Court for the North District of Georgia, Atlanta Division.

(Dkt. 1-1.) Defendants argue that the allegations and claims in the Complaint arise under the Franchise Agreement or relate to alleged acts all of which concern the Franchise Agreement. (Dkts. 25, 27-1.)

In the Complaint, Plaintiffs allege venue is proper in this Court pursuant to Idaho Code § 29-110, because Plaintiffs are franchisees and part of the area of the franchise is in Idaho. (Dkt. 1.) In opposition to the Venue Motions, Plaintiffs argue the forum-selection clause in the Franchise Agreement does not apply to all of the claims involved in this case. (Dkts. 37, 39.) Rather, the forum-selection clause is limited to the breach of contract claims and is only binding on the Franchise Agreement signatories and their assigns; i.e., Plaintiffs and Skitter Cable TV. *Id.*

## 1.    Legal Standards

Pursuant to 28 U.S.C. § 1404(a), the Court "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which the parties have consented" provided such transfer is "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); *Atlanta Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) ("*Atlanta Marine*"). "Section 1404(a) is . . . a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* at 580. The analysis of a Section 1404(a) change of venue motion depends on whether there is a valid and enforceable forum-selection clause.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (quoting *Van Dusen v. Barrack*, 276 U.S. 612, 622 (1964)). The purpose of the rule is "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen*, 276 U.S. at 616 (internal quotations omitted).

### A.    *Section 1404(a) without a Forum Selection Clause*

Courts must consider a variety of case-specific factors in determining whether to transfer an action. *See Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498 (9th Cir. 2000). Such factors may include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498–99.

Courts divide these considerations into "public factors" and "private factors." *See Atlantic Marine*, 143 S.Ct. at 581, n. 6; *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986). Private factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view

would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). Public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft,* 454 U.S. at 241 n. 6 (quoting *Gulf Oil Corp.,* 330 U.S. at 509). Generally, in the absence of a forum-selection clause, a plaintiff's choice of forum is afforded substantial weight. *Decker*, 805 F.2d at 843.

### B.    Section 1404(a) with a Forum Selection Clause

In the *Atlanta Marine* decision, the United States Supreme Court made clear that "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Stewart Organization, Inc.*, 487 U.S. at 33). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case specified in that clause" unless the non-moving party shows "extraordinary circumstances unrelated to the convenience of the parties." *Id.*

The existence of a valid forum-selection clause changes the typical 1404(a) analysis in three ways. *Id.* "First, the plaintiff's choice of forum merits no weight." *Id.* Second, the Court "should not consider arguments about the parties' private interests." *Id.* at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation

and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules- a factor that in some circumstances may affect public-interest considerations." *Id.*

2.      **Transfer is Appropriate under 28 U.S.C. § 1404(a) and *Atlantic Marine*.**

Because the scope of the forum-selection clause applies to all of Plaintiffs' claims and all of the Defendants have consented to the transfer, the Court finds the Venue Motions should be granted for the convenience of the parties and witnesses and in the interest of justice. Moreover, the Court finds all of the parties have consented to transfer within the meaning of Section 1404(a) and the *Atlantic Marine* analysis applies to the Venue Motions.

A.      ***The Substance of Plaintiffs' Claims against All of the Defendants Fall within the Scope of the Forum-Selection Clause.***

In the forum-selection clause, Plaintiffs and Defendant Skitter Cable TV agreed "that any litigation brought by either party against the other party **in connection with any rights or obligations arising out of this Agreement**" would be venued in Georgia. (Dkt. 1-1 (emphasis added).)  All of Plaintiffs' claims arise from, and are inextricably connected to, the Franchise Agreement.

In general, Plaintiffs claim that the Defendants together conspired to deprive Plaintiffs of the benefits of the Franchise Agreement. Plaintiffs' claims include: (1) breach of contract and breach of the covenant of good faith and fair dealing against the Skitter Defendants; (2) fraud against the Skitter Defendants and Defendant Saunders; (3) tortious interference with contract against Video 6; (4) unjust enrichment against all the Defendants, and (5) state and federal racketeering claims against all the Defendants.

First, it cannot be disputed that the breach of contract and breach of good faith and fair dealings claims are premised upon the Franchise Agreement and thus subject to the forum-selection clause. Second, the fraud claim relates to the Skitter Defendants' and Defendant Saunders' alleged misrepresentations specifically concerning the Skitter Defendants' ability to fulfill their obligations under the Franchise Agreement. (Dkt. 1, ¶ 133). Third, the tortious interference with contract claim is based on Video 6's alleged intentional interference with the Franchise Agreement by exerting its control over the management and operations of the Skitter Defendants. Fourth, the unjust enrichment claim applies to all of the Defendants who obtained funds from the Plaintiffs by representing that the funds were necessary in order for the Skitter Defendants to meet their operational expenses and their contractual obligations under the Franchise Agreement. Fifth, the racketeering claims allege that all of the Defendants together operated an enterprise in order perpetrate the fraud upon the Plaintiffs and ultimately cause the Skitter Defendants to breach the Franchise Agreement.

In short, none of the claims would exist without the Franchise Agreement. It is the common denominator that brought the parties together and but for the Franchise Agreement, none of these claims would exist. Accordingly, the scope of the forum-selection clause covers the substantive claims at issue and Skitter Cable TV, at a minimum, has the right to enforce that agreement against both Plaintiffs.

Moreover, because the remaining Defendants consent to transfer, the Court finds that, for the convenience of the parties and witnesses and in the interests of justice the case

should be transferred. This will allow the claims, which are inextricably connected, to be adjudicated together.

### B. *All Parties Have Consented to Transfer.*

Section 1404(a) grants courts discretion to transfer a civil action to "any district or division to which all parties have consented." 28 U.S.C. § 1404(a). There is no requirement in the statute that the consent be written or executed contemporaneously. Nor is there a requirement that all parties be bound by the forum-selection clause in order to consent to a particular venue.

In this case, all of the parties have consented to venue this dispute in the Northern District of Georgia. Plaintiffs and Skitter Cable TV specifically consented to venue there in the Franchise Agreement. Further, all of the Defendants have consented to the change in venue as reflected by their filings in this case. (Dkts. 24, 27, 30, 32).

Because all of the parties have consented to venue this dispute in the Northern District of Georgia, the Court finds that *Atlantic Marine* controls this case. Thus, the Court should transfer the case unless Plaintiffs demonstrate "extraordinary circumstances unrelated to the convenience of the parties." *Atlantic Marine*, 143 S.Ct. at 581.

### C. *There are No Extraordinary Circumstances Present that Would Justify Denying the Venue Motions.*

In the context of a valid forum-selection clause, the Court's analysis of the Venue Motions is limited to the public interest factors relevant to a *forum non conveniens* inquiry and any other extraordinary circumstances the non-moving party identifies in opposition to the transfer. The Court does not give consideration to the Plaintiffs' choice of forum, the

Plaintiffs' private interests, or Idaho's choice-of-law rules. *Altantic Marine*, 143 S.Ct. at 581-82.

The public interest factors the Court may consider in a *forum non conveniens* inquiry are: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. *Atlantic Marine*, 143 S.Ct. 581, n. 6 (quoting *Piper Aircraft Co.*, 454 U.S. 241, n. 6). In this case, the public factors do not weigh in favor of keeping the case in Idaho. Rather, given Georgia's substantial, parallel interest in the parties' dispute, the Court does not find any exceptional circumstances that would warrant overriding the forum-selection clause in the Franchise Agreement.

Most of the public interest factors do not favor one venue over another. For example, court congestion appears to be a non-issue. Further, this controversy is no more local to Idaho than it is to Georgia.

The allegations relate to a franchise operated, in part, in Idaho with a franchisor in Georgia. In addition, six of the eight defendants appear to be Georgia citizens. Other contacts between this dispute and Georgia include:

> The Franchise Agreement originated in Georgia from the Skitter corporate [sic] Defendants. Robert Saunders . . . executed it on their behalf in Georgia. The Skitter Defendants' performance occurred and originated in Georgia, and all relevant communications by Plaintiffs were to Skitter Defendants in Georgia, and by the Skitter Defendants to Plaintiffs from Georgia.

(Dkt. 27-1). Thus, while this dispute undoubtedly has contacts with Idaho, the Court does not find Idaho's interest in this controversy overwhelmingly greater than that of Georgia.

Plaintiffs rely on Idaho Code § 29-110(2) to argue that Idaho has a substantial interest in this lawsuit given its strong public policy voiding clauses in franchise agreements that attempt to waive venue or jurisdiction in Idaho. The statute states, "[a]ny condition, stipulation or provision in a franchise agreement is void to the extent it purports to waive, or has the effect of waiving, venue or jurisdiction is the state of Idaho's court system." I.C. § 29-110(2).

However, this Court has rejected this argument on at least two previous occasions with specific regard to I.C. § 29-110(1), the more general Idaho statute that states, "[e]very stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract in Idaho tribunals . . . is void as it is against the public policy of Idaho." This Court has concluded a plaintiff "must point to something more than just the statute itself to warrant ignoring the forum selection clause" because "[i]f Idaho Code § 29-110(1) was determinative, striking down forum selection clauses would be *routine* rather than *extraordinary*, standing *Atlantic Marine* on its head." *Wada Farms, Inc. v. Jules & Assoc., Inc.*, 2015 WL 128100, at *2 (D. Idaho Jan. 7, 2015); *Idaho Pacific Corp. v. Binex Line Corp.*, 2016 WL 843254, at *10 (D. Idaho Mar. 1, 2016).

This reasoning is equally applicable with regard to I.C. § 29-110(1). Further, the parties agreed that the validity and enforcement of the Franchise Agreement would be determined by Georgia as opposed to Idaho law. Thus, the Court finds the Idaho public policy articulated in I.C. § 29-110(2) is not sufficient reason to deny the Venue Motions.

Plaintiffs cite two additional factors they argue are exceptional in this case and warrant a denial of the Venue Motions. These are: (1) potential jurisdictional issues and

(2) perpetuation of the Skitter Defendants' fraud. Again, the Court does not find these arguments persuasive.

First, the jurisdictional concerns do not appear to be a substantial issue given the allegations in the Complaint and the contacts with Georgia. All of the five Skitter Defendants are Georgia business organizations and Robert Saunders is a Georgia resident. In addition, the claims against Kingdom Telephone Company and Video 6 are that these entities were involved in an enterprise and conspiracy with the Skitter Defendants and also that they exerted improper control over the management of the Skitter Defendants. It is difficult to imagine that such allegations do not give rise to personal jurisdiction in Georgia.

Second, Plaintiffs do not allege that the contract at issue was *void ab initio* due to Defendants' fraud. Instead, Plaintiffs include in their Complaint a breach of contract claim against all of the Skitter Defendants premised upon a valid and enforceable Franchise Agreement. Plaintiffs offer no evidence as to a fraud claim that is specific to the forum-selection clause. Moreover, the fraud claim is just that; it is a claim. Plaintiffs have not set forth any evidence that would support a finding that extraordinary circumstances connected to a fraud exist here.

In short, because the parties all consented to venue in Georgia, the Court applies the *Atlantic Marine* analysis to Defendants' Venue Motions. Under this analysis, Plaintiffs have the burden of proving extraordinary circumstances to warrant denying the motion. Because Plaintiffs have not met their burden, the Court must grant the Venue Motions.

### D. Application of the Forum Selection Clause to Non-Signatory Defendants

Plaintiffs argue that neither Section 1404(a) nor *Atlantic Marine* applies to this case, because not all of the parties were signatories to the Franchise Agreement. The Court is not persuaded by this argument for three reasons.

First, as a preliminary matter, the plain language of Section 1404(a) only requires that the parties consent to the alternative venue. 28 U.S.C. § 1404(a) ("a district court may transfer any civil action to any district or division . . . to which all parties have consented.") The statute is otherwise silent regarding how the consent is expressed, allowing parties to agree to a venue in a contract predating the litigation or during the litigation. *See Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp.2d 561, 586 (W.D. Tex. 2014) (holding the motion requesting transfer sufficient consent to venue in the alternative forum).

Second, while all of the parties in *Atlantic Marine* were parties to the contract with the forum-selection clause, that is a distinction without a difference. *Atlantic Marine*, 143 S.Ct. 581. The *Atlantic Marine* decision provides instruction for the Court in the context of a Section 1404(a) motion where, as here, all the parties have consented to an alternative venue. The decision is based on the existence of a valid forum-selection clause, but it does not require or otherwise address a potential requirement that all the parties to the lawsuit consent to the alternate venue in a forum-selection clause.

In this case, Plaintiffs agreed to the alternate venue in a forum-selection clause that applies to the substantive claims at issue. Because Plaintiffs agreed to try these claims and any other claims arising from the Franchise Agreement against Skitter Cable TV in the Northern District of Georgia, Plaintiffs cannot argue now that it would be inconvenient to

do so. While the claims include additional Defendants, Plaintiffs' allegations against these Defendants are inextricably linked with the Franchise Agreement.

Third, there is case law, including Ninth Circuit case law rejecting Plaintiffs' argument that a forum-selection clause only applies when all parties are signatories to the contract with the forum-selection clause. Specifically, in *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988), the Ninth Circuit upheld a district court decision dismissing a lawsuit on the basis of a forum-selection clause even though the plaintiff, who was a party to the contract with the forum-selection clause, brought the case against six defendants, four of whom were non-parties to the contract. *Id.* at 514, n.5. The Ninth Circuit enforced the forum-selection clause to all of Plaintiffs' claims because "the alleged conduct of the non-[signatories] [was] so closely related to the contractual relationship." The Ninth Circuit reasoned, "a range of transaction participants, parties, and non-parties, should benefit from and be subject to forum selection clauses." *Id.* (quoting *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984)).

Other courts have addressed this "closely-related" theory in the context of allowing signatories to a forum-selection clause to enforce it against non-signatories.[2] "It is widely accepted that non-signatory third parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *Synthes, Inc. v. Emrege Medical, Inc.*, 887 F.Supp.2d

---

[2] Other agency and contract theories used by courts to enforce forum-selection clauses against non-signatories include *inter alia*: agency, veil piercing/ alter ego, third-party beneficiary, and direct benefits estoppel. *See Harland Clarke Holdings Corp.*, 997 F. Supp.2d at 580-584.

598, 607 (E.D. Pa. 2012) (internal quotations omitted). Courts considering whether a non-signatory is sufficiently "closely related" to the contract to be bound by a forum-selection clause must apply a "common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Id.* (internal quotations omitted). "This approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Id.*

In this case, the Plaintiffs are signatories to the forum-selection clause with Skitter Cable TV, one of the Defendants in this lawsuit. Because the conduct of the non-signatory Defendants is sufficiently closely related to the contractual relationship, the Court finds the forum-selection clause applies to all of the Defendants consistent with the Ninth Circuit decision in *Manetti-Farrow*.

Plaintiffs misplace reliance on an unpublished Ninth Circuit case, *Meggitt San Juan Capistrano, Inc. v. Nie Youngzhong*, 575 Fed. App'x 801, 803 (9th Cir. 2014), to support their argument that all parties must be signatories to the forum-selection clause for it to be enforceable. However, the *Meggitt* decision held that a defendant, who was a signatory to the forum-selection clause, could not rely on it against a non-signatory plaintiff. *Id.* In addition, the Ninth Circuit held the claim at issue did not fall within the scope of the forum-selection clause. Accordingly, the Court did not allow the non-signatory Defendant to enforce the forum-selection clause.

In contrast, in this case, the Plaintiffs are signatories to the forum-selection clause; all of the parties to the Franchise Agreement are parties to the suit; the forum-selection clause applies to all of the claims at issue; and all of the non-signatories have agreed to the alternate venue. Accordingly, the Court finds that the parties have consented to venue this case in the Northern District of Georgia within the meaning of 28 U.S.C. § 1404(a).

## CONCLUSION

In sum, the Court finds it appropriate to transfer this case to the Northern District of Georgia consistent with the forum-selection clause in the Franchise Agreement. There is no requirement that the forum-selection clause be mutually binding on all of the parties in order to be used as a basis for a motion to change venue pursuant to 28 U.S.C. § 1404(a). It is mutually binding on the Plaintiffs and, at a minimum, Skitter Cable TV. That is sufficient where, as here, all of the claims fall within the scope of the forum-selection clause and the non-signatory Defendants agree to transfer the case allowing it to proceed in one venue.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Skitter Defendants' Motion for Change of Venue (Dkt 24) and Defendant Robert Saunder's Motion to Transfer Venue (Dkt. 27) are GRANTED as stated herein.

///

///

///

///



DATED: August 9, 2017

Edward J. Lodge
United States District Judge